# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CHICAGO BUILDING DESIGN, P.C., an Illinois corporation, and JEREMIAH JOHNSON, an individual

    Plaintiffs,

v.

MONGOLIAN HOUSE, INC. (d/b/a "Plan B - Chicago"), an Illinois corporation, RYAN GOLDEN, an individual, MARK PERRES, an individual, and JOHN A. WILSON, an individual.

    Defendants.

No. 12 C 1010

## MEMORANDUM OPINION AND ORDER

Chicago Building Design ("CBD") and its president, Jeremiah Johnson, brought this suit as a result of a failed business relationship with Mongolian House, Inc. ("Mongolian House"). Plaintiffs' nine-count First Amended Complaint ("FAC") names Mongolian House, its owners, Ryan Golden and Mark Perres; and John Wilson, an architect. Plaintiffs bring various breach of contract claims against Golden and Perres (Counts I through IV); copyright infringement claims against Wilson, Golden, and Perres (Counts V through VII); a claim for quantum meruit against Golden, Perres, and Mongolian House (Count VIII) and a claim of fraud against Golden and Perres (Count IX). All Defendants have brought motions to dismiss arguing that the copyright infringement claims are time-barred. They also ask that I

decline to exercise supplemental jurisdiction over the remaining state law claims or dismiss certain of those claims for failure to state a claim upon which relief can be granted. For the reasons that follow, the motions to dismiss are granted to the extent that I find the copyright infringement claims time-barred. I also decline to exercise supplemental jurisdiction over the remaining claims.

I.

According to Plaintiffs' FAC, the allegations of which will be accepted as true for the purposes of ruling on these motions to dismiss, CBD and Johnson offer design, architecture and construction services to bars, restaurants, and night clubs. Golden and Perres, who each had an ownership interest in Mongolian House, retained Plaintiffs' services to renovate the premises at 1635 N. Milwaukee Ave. into a cocktail bar named Plan B – Chicago ("Plan B").

On April 17, 2006, CBD submitted a project proposal to Golden and Perres for the architectural design of Plan B. CBD submitted a revised proposal on May 4, 2006, which was signed by Golden and Perres on May 9, 2006. The total price of the architectural services was $15,000. This agreement (the "design contract") was eventually signed by all the parties. CBD completed the architectural work on June 7, 2006, and on that day

delivered completed architectural blueprints to Golden and Perres.

On June 26, 2006, CBD entered into a contract with Golden and Perres for the performance of construction work related to Plan B (the "construction contract"). Under the terms of the contract, CBD was to be paid $259,100.00. Additionally, in further consideration for the construction work, Johnson was to receive a percentage of equity ownership in Plan B that would entitle him to 15 percent of the profits. CBD completed the construction work on March 17, 2007, and Plan B opened on that date.

To date, Plaintiffs allege, CBD has received approximately $11,000 of the $15,000 due on the design contract. CBD has received approximately $45,000 of the amount due on the construction contract, with $214,000 still owed. Johnson also has not received the promised equity payments.

The copyright infringement counts, which are the basis for this court's jurisdiction over the matter, concern the architectural blueprints. The blueprints are the subject of a copyright issued to CBD and registered on May 1, 2009. (*See* Dkt. No. 27-6.) Plaintiffs allege that on or about June 8, 2006, they filed the blueprints with the City of Chicago along with an application for a repair and replace permit. The city accepted the application and issued the permit.

Plaintiffs allege that sometime in 2008, an employee of CBD visited the City of Chicago's offices for the purpose of a zoning review and "happened to witness the Blueprints. The CBD employee examined the Blueprints and discovered they had been registered by Wilson." FAC, ¶ 31. Plaintiffs maintain that they never authorized any of the Defendants to retain, copy, modify, distribute or display the blueprints. They contend Defendants modified or copied the blueprints, placed Wilson's name on them, and submitted them to the city with the intent to pass them off as Wilson's in order to secure a full building permit, rather than the repair and replace permit that had been previously issued. That full building permit allowed for interior alterations and increased occupancy levels at Plan B.

On May 8, 2009, the city issued a building permit based on the blueprints. Customarily, after issuing a permit, the city keeps one copy of the blueprints and permit, and distributes two copies to the owner of the property or the architect. Based on this, Plaintiffs believe that on May 8, 2009, the city distributed two copies of the blueprints to Golden, Perres, and/or Wilson. On July 27, 2009, the city inspected the premises at Plan B, and it passed inspection. Blueprints must be reviewed by an inspector during this process, so Plaintiffs allege on information and belief that Golden and Perres used the blueprints to facilitate the inspection. Also upon information and belief,

4

Plaintiffs allege that Defendants continued to use the blueprints for city inspections until January 2012. Plaintiffs attempted to obtain a copy of the blueprints from the city via the Freedom of Information Act, but were told they were exempt from disclosure.

## II.

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although a complaint's factual allegations need not be detailed, they must provide more than "labels, conclusions, or formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level." *Ruiz v. Kinsella,* 770 F. Supp. 2d 936, 941–42 (N.D. Ill. 2011)(citing *Twombly,* 550 U.S. at 555). In ruling on such a motion, the question is whether the facts, accepted as true, "present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Although a statute of limitations defense does not normally form the basis for a motion to dismiss under Rule 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable

statute of limitations, dismissal is appropriate. *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

III.

Copyright protection "subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated . . . ." *McIntosh v. N. Calif. Univ. Enter. Co.*, 670 F. Supp. 2d 1069, 1086 (E.D. Calif. 2009)(quoting 17 U.S.C. § 102(a)). Works of authorship include "architectural works," *see* 17 U.S.C. § 102(a)(8), and there is no dispute that the plans at issue in this case are subject to copyright protection.

There also is no dispute that copyright infringement claims are governed by a three-year statute of limitations. 17 U.S.C. § 507(b). The key issues here are when Plaintiffs discovered the alleged infringement, and whether the continuing violation doctrine applies to make Plaintiffs' copyright infringement claims timely.

Relevant to the instant case, the Copyright Act confers the following rights on the owner of a copyright:

> (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based on the copyrighted work; and (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

17 U.S.C. § 106(1)-(3). Anyone who violates these exclusive rights may be liable for copyright infringement. 17 U.S.C. § 501.

Defendants contend that, accepting the allegations of the FAC as true, any copyright infringement that occurred in this case as a result of Defendants' modifying the blueprints and causing Wilson's name to be placed on them was complete by the end of 2008. Defendants point to Plaintiffs' allegation that one of their employees saw the blueprints at city offices some time in 2008. As such, Defendants contend, Plaintiffs were on notice of the alleged infringement by no later than Dec. 31, 2008, and were required to file suit by Dec. 31, 2011. Plaintiffs filed suit on Feb. 13, 2012, so the copyright claims are time-barred, Defendants argue.

In response, Plaintiffs first argue that the statute of limitations does not begin to run until they discovered, or reasonably could have discovered, the infringement. *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983). In this case, Plaintiffs argue, the fact that their employee saw the blueprints registered to Wilson was not sufficient for them to determine that there had been infringement. In an attempt to verify the infringement, Plaintiffs requested a copy of the blueprints from the City of Chicago, but were told they were not subject to disclosure under the Freedom of Information Act. Plaintiffs argue they continued to make good faith efforts to verify the

7

infringement by reviewing the Building Data Warehouse Report, but that report did not reveal infringement until May 8, 2009, when the city issued a permit based on the blueprints. Plaintiffs contend that the statute of limitations began to run on this date.

Additionally, Plaintiffs note that in an effort to determine whether their copyright had been infringed, they filed a complaint against Wilson with the Illinois Department of Financial and Professional Regulation ("IDPR") in order to compel Defendants to disclose the blueprints. The IDPR sent Plaintiffs a letter dated Feb. 20, 2009, acknowledging receipt of the complaint, but Plaintiffs did not receive any further correspondence from the IDPR. Plaintiffs also contend that they attempted to talk with Golden and Perres about the blueprints, but Golden and Perres rebuffed their attempts.

Plaintiffs' arguments fail because actual knowledge of an infringement is not required to trigger the running of the statute of limitations. Rather, the statute began to run when the Plaintiffs had knowledge that would have led reasonable people to investigate the possibility that their legal rights had been infringed. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992–93 (7th Cir. 2002). Plaintiffs clearly were on inquiry notice of a potential violation of their rights when their employee saw the blueprints, which happened no later than Dec.

31, 2008.  In fact, as outlined above, Plaintiffs did proceed at that time to investigate the possibility that their copyright had been infringed.  The fact that Plaintiffs could not at that time verify that infringement had occurred does not toll the running of the statute of limitations.

Nor does the doctrine of fraudulent concealment apply.  Even if, as Plaintiffs allege, Defendants took steps to conceal their infringement by putting Wilson's name on the blueprints or by refusing to respond to Plaintiffs' inquiries about the blueprints, the doctrine of fraudulent concealment is inapplicable when a party, through reasonable diligence, could have discovered the existence of a claim within the limitations period.  *See Hardaway v. CIT Group/Consumer Fin. Inc.*, 836 F. Supp. 2d 677, 684–85 (N.D. Ill. 2011).  Here, by their own admissions, Plaintiffs were on inquiry notice of their infringement claim by the end of 2008, regardless of any efforts to conceal the allegedly infringing acts.  Further, Plaintiffs acknowledge that they knew of the infringement by May 8, 2009, when the city issued a building permit based on the blueprints.  This was well within the limitations period, and nothing Defendants did prevented Plaintiffs from filing suit at that time.

Next, Plaintiffs contend that their copyright infringement claim is timely in light of the "continuing violation" doctrine,

and that this doctrine allows them to recover for all the acts of infringement, including those in 2008 that would otherwise be time-barred.  As Plaintiffs view it, there were several acts of alleged infringement: (1) when Wilson, with the assistance of Golden and Perres, modified the blueprints by placing his name on them and distributing them to the City of Chicago in 2008; (2) when the City of Chicago issued the building permit and distributed copies of the blueprint to Wilson in May 2009, with Wilson ultimately giving the blueprints to Golden and Perres; and (3) when Golden and Perres used the blueprints to pass annual inspections at Plan B.

"A continuing violation exists when the first wrongful act does not create a separate, complete action, but instead marks the first step in a pattern of wrongful conduct."  *Forster Music Publisher, Inc. v. Price Stern Sloan, Inc.*, No. 93 C 4487, 1995 WL 239093, at *2 (N.D. Ill. April 21, 1995) (citing *In re Gaslight Club*, 167 B.R. 507, 520 (Bankr. N.D. Ill. 1994)).  Provided that at least one of the wrongful acts occurred during the limitations period, the continuing violation doctrine allows "plaintiffs to reach back in time and yank otherwise time barred incidents (or their non-time barred effects) forward into the limitations period."  *In re Gaslight Club*, 167 B.R. at 520.  It does not apply when the harm is "definite and discoverable," and the plaintiff knew or should have known of the violation, but

failed to file suit at an earlier time. *Forster*, 1995 WL 239093, at *2 (citing *Moskowitz v. Trustees of Perdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993)).

Plaintiffs rely on *Taylor*, 712 F.2d at 1118–19, to support their theory of a continuing violation. There, an infringer copied the plaintiff's maps in 1976 and 1977, and either sold those copies or allowed his dealers to sell them until 1979. *Id.* at 1119. The Seventh Circuit held that although the first acts of infringement occurred more than three years prior to the filing of the suit, there had been a continuing violation, and so the statute of limitations did not begin to run until the last act of infringement. *Id.* at 1118–19. This rule was meant to strike a balance between plaintiffs' interest in not having to file multiple, successive lawsuits to vindicate their rights, and defendants' interest in knowing with certainty whether they will be sued during the statutory period. *Id.* at 1119.

As the *Forster* court noted, however, *Taylor* was based on several rationales, including that the defendant fraudulently concealed the infringement, and a reasonable person would not have discovered the allegedly infringing acts within the statute of limitations. 1995 WL 239093, at *2 (citing 712 F.2d at 1118–19). Although *Taylor* is still good law, the Seventh Circuit has subsequently held that "a continuing violation is one that could not reasonably have been expected to be made the subject of

a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period". *Dasgupta v. Univ. of Wis. Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997); *see KnowledgeAZ, Inc. v. Jim Walters Res., Inc.,* 617 F. Supp. 2d 774, 792 (S.D. Ind. 2008) (applying that rule in the context of a copyright infringement action).

There are several problems with Plaintiffs' "continuing violation" theory. First, Plaintiffs fail to provide a cogent explanation of why they could not have sued for infringement earlier, given that they were on notice of possible infringement no later than the end of 2008. Additionally, they fail to explain how the post-2008 acts constitute copyright infringement, and thus fail to allege any acts of infringement within the limitations period. The issuance of the building permit on May 8, 2009, was done by the City of Chicago, not Defendants, and regardless it is not clear how this act infringed Plaintiffs' exclusive rights under the copyright. *See Lee v. Deck the Walls, Inc.,* 925 F. Supp. 576, 580 (N.D. Ill. 1996) (explaining that a person does not infringe a copyright by using a work in some unauthorized manner outside of the copyright holder's exclusive rights).

Plaintiffs argue that Wilson must have received the blueprints from the city following the issuance of the permit,

and then given them to Perres and Golden, who thereafter used them to pass city inspections. These acts, Plaintiffs allege without citation to authority, violated Plaintiffs' exclusive right of "distribution" under 17 U.S.C. § 106(3).

The Seventh Circuit has held that right of distribution in the Copyright Act is synonymous with the right of publication. *Kennedy v. Nat'l Juvenile Detention Ass'n*, 187 F.3d 690, 697 (7th Cir. 1999). The statute defines publication using the same language as used in § 106(3) to describe distribution. *Id. Compare* 17 U.S.C. § 101 ("'Publication'" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.") *with* 17 U.S.C. § 106(3) (giving copyright holder exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."); *see* 2-8 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8.11(B)(2)(a) (2012) ("*Nimmer*") (noting that the Copyright Act contains no definition of distribution, but does define publication, "the term that undergirds the rights accorded by Section 106(3).").

Plaintiffs contend that the Wilson "distributed" the blueprints to Golden and Perres after the city issued the building permit, and that Golden and Perres then "distributed" the blueprints to building inspectors, but "distribution" is a

13

term of art under the Copyright Act that requires more than the an allegation that the documents changed hands.  First, the statute requires distribution "to the public," which typically is interpreted to mean a general distribution.  *See* 2-8 *Nimmer*, § 8.11 (C)(1)(b) and n. 139 (noting that "a distribution made to a limited group for a limited purpose and not to the public at large" does not infringe the distribution right).  Additionally, in the publication context, courts have held that distribution of architectural works to contractors, landlords, and building authorities is not a publication, or is a "limited publication" not covered by the Copyright Act.  *McIntosh*, 670 F. Supp. 2d at 1097–98; *Kunycia v. Melville Realty Co., Inc.*, 755 F. Supp. 566, 574 (S.D.N.Y. 1990); *Schuchart & Assocs. v. Solo Serve Corp.*, No. SA-81-CA-5, 1983 WL 1147, at *11 (W.D. Tex. June 28, 1983). Interpreting distribution as synonymous with publication, it follows that the post-2008 actions complained of by Plaintiffs also do not constitute a distribution under the Copyright Act. Plaintiffs have failed to allege any acts of reproduction, preparation of a derivative work, or distribution to the public within the limitations period, so their continuing violation theory fails and their copyright claims are time-barred.

For these reasons, Plaintiffs' copyright infringement claims are dismissed with prejudice.  All of the remaining claims are state law claims over which I decline to exercise supplemental

jurisdiction. *RWJ Mgmt. Co., Inc. v. BP Prods N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). As such, the portions of Defendants' motions to dismiss touching on those state law claims is denied without prejudice, and this case is dismissed without prejudice to those claims being refiled in state court.

IV.

For the reasons stated herein, Defendant Mongolian House and Golden's Motion to Dismiss (Dkt. No. 31) is granted to the extent it contends that the copyright infringement claims are time-barred, as are Defendant Mark Perres' *pro se* Motion to Dismiss (Dkt. No. 28), and Defendant Wilson's Motion to Dismiss (Dkt. No. 29). Defendants' earlier filed motions to dismiss, which applied to a prior version of Plaintiffs' complaint, are denied as moot. (Dkt. Nos. 16, 20.) Plaintiffs' motion for a default judgment against Perres (Dkt. No. 18) is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 31, 2012